**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**AMALGAMATED LOCAL 286, INTERNATIONAL UNION, UNITED AUTOMOBILE WORKERS OF AMERICA, A. F. L., Respondent.**

**No. 11349.**

United States Court of Appeals
Seventh Circuit.

April 28, 1955.

David P. Findling, Associate Gen. Counsel, William J. Avrutis, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Arnold Ordman, Atty., National Labor Relations Board, Washington, D. C., for petitioner.

Albert J. Goldberg, Milwaukee, Wis., Padway, Goldberg & Previant, Milwaukee, Wis., for respondent, Amalgamated Local 286, International Union, United Automobile Workers of America, A. F. of L.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

This petition, filed pursuant to the provisions of Section 10(e) of the National Labor Relations Act, as amended, 29 U.S.C.A. § 160(e), prays enforcement of the National Labor Relations Board's order of October 18, 1954, against respondent union, 110 N.L.R.B. No. 53.

Respondent is the duly certified collective bargaining agent for the production and maintenance employees of Delta Star Electric Division, H. K. Porter Company, Inc. Based on charges made by certain of these employees, a complaint issued June 22, 1953, which alleged, in substance, that the union had violated Section 8(b) (1) (A) of the Act, 29 U.S.C.A. § 158(b) (1) (A), by threatening to deprive the charging parties of group and hospitalization coverage, because they had refused to pay certain disciplinary assessments and fines which the union had imposed upon them. After hearing, the examiner determined that the insurance coverage was a benefit and grew out of union membership, not a condition of employment, and recommended that the complaint be dismissed. The Board disagreed, concluding that respondent had threatened to deprive the charging parties of a condition of employment and issued the cease and desist order which it now seeks to enforce.

There is no dispute as to the facts. At all times since 1943 respondent has been the collective bargaining agent for the employees. Sometime prior to 1951 it entered into an agreement with Delta, whereby the latter agreed to provide, at its own expense, group and hospitalization insurance for the approximately 400 employees in the bargaining unit. At the same time, respondent had carried group and hospitalization insurance on its 4,000 members employed by persons other than Delta. In November, 1951, respondent suggested to Delta that its employees' benefits would be greatly enhanced if the insurance program were transferred to respondent for its complete administration under its substantially larger and less expensive group

policy. This plan was consummated. Under it Delta computed the insurance costs at $5.15 per month per employee, and thereafter, until December 30, 1952, this sum was added to and included in the wages payable to each employee, was then deducted from the total amount due the employee, and remitted to the union. On December 30, 1952, a new bargaining agreement was negotiated, which provided, *inter alia*, for a wage increase of 18¢ per hour across the board. The insurance provisions of the superseded contract were omitted from the new contract.

A wage supplement attached to and made a part of the agreement reads, in part, as follows:

"All of the above rates include three (3) cents per hour to cover life and hospitalization insurance premiums which are paid by the employer. The cost of this insurance is $5.15 per month for each employee in the bargaining unit. Insurance premiums are to be deducted as a portion of union dues on the first pay period of each month and rebated to the union.

\* \* \* \* \*

"Any employee who has not worked during the first pay period of two (2) or more successive months, and who does not wish his insurance to lapse will be required to contact the local union office to make arrangements for the premiums for a period or periods he does not appear on the payroll."

Whether the group insurance coverage was a condition of employment or a derivative benefit arising from union membership must be determined by the intent of the parties as expressed in their agreement. Both the examiner and the Board thought that the insurance provisions were beset by ambiguity. The Board, contrary to the examiner's recommendation, resolved that assumed ambiguity by concluding that since the new agreement did not expressly exclude insurance coverage as a condition of employment, it must be interpreted as retaining the provision in that respect contained in the superseded contract.

This we think, was error. The Board's conclusion was based on terms which it chose to read into the contract by implication, contrary to all evidence of record. This it was not justified in doing. N. L. R. B. v. Rockaway News Supply Co., 345 U.S. 71, 79, 73 S.Ct. 519, 97 L.Ed. 832. It is fundamental that the burden was on the Board to prove the charge made in the complaint, not on respondent to disprove an intention which the Board might arbitrarily choose to read into the agreement. N. L. R. B. v. Reynolds International Pen Co., 7 Cir., 162 F.2d 680; See N. L. R. B. v. Wagner Iron Works, etc., 7 Cir., 220 F.2d 126.

The contract is silent on the insurance question except for the statement in the wage supplement with reference to the 3¢ per hour increase in wages and the further recital that "premiums are to be deducted as a portion of union dues." If this is indeed ambiguous, all the evidence of record points to the conclusion that the parties intended that the insurance program under the 1952 agreement should be the responsibility of the union. This is borne out by respondent's letter of December 23, 1952, directing Delta to deduct union dues of $8.15 per month upon the signed authorization of each employee, which represented an increase in dues of $5.15 per month, and by a notice posted by Delta on January 5, 1953, to the effect that, thereafter, deductions for insurance benefits would be included in the monthly deduction for union dues. Furthermore, the testimony of the employer's officials was to the effect that the company bore no responsibility for the operation or administration of the insurance program, but that it was merely deducting on written authorization of each employee, union dues in the amount which respondent requested.

We are not concerned with the reasons for the change in administration of the insurance program, but rather with the

determination of the intention of the parties in this respect as set forth in their agreement. We can not condone a procedure which attempts to define that intent by grafting onto the contract a disinterred provision of a deceased agreement. The record leads to only one sound conclusion, namely, that insurance coverage under the circumstances of this case, was a benefit incidental to union membership and not a condition of employment. Its threatened withdrawal of the rights of the complaining employees, as a disciplinary measure, was in full conformity with respondent's right to regulate its internal affairs. American Newspaper Publishers Ass'n v. N. L. R. B., 7 Cir., 193 F.2d 782.

Enforcement is denied.